J-S50009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARCO BULLOCK | |
| Appellant | No. 2292 EDA 2014 |

Appeal from the PCRA Order July 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0701821-2006

BEFORE:  PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 18, 2015**

Appellant, Marco Bullock, appeals *pro se* from the order entered July 10, 2014, in the Court of Common Pleas of Philadelphia County, which denied his petition filed pursuant to the Post Conviction Relief Act[1] ("PCRA"). No relief is due.

This Court previously summarized the facts of this case as follows.

> A group of about eight friends gathered together on 9th and Cantrell Streets in the city of Philadelphia around 11 o'clock on the evening of May 6, 2004.  About 20 minutes later, co-defendant Bullock, who used to live in that neighborhood, joined the crowd.  Everyone in the group got along; they smoked blunts, drank and socialized.
>
> Approximately 20 minutes following Bullock's arrival, co-defendant [Kiyiem] Hagwood appeared at the scene wearing a hoodie; no one other than Bullock seemed to personally know

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

him. Hagwood asked one of the girls in the group for her phone number and then inquired if anyone had marijuana. When the victim, 18-year-old Andrew Rivera, indicated he had some marijuana, the two men walked about two houses away from the group. Less than one minute later, Rivera yelled for help and an eyewitness saw someone hit him over the head with the handle of a gun[,] which caused Rivera to collapse. One eyewitness testified he then heard eight shots fired at the victim; the bullets penetrated the victim's arm, flank, chest, abdomen and groin. While the shots were being fired[,] the entire group retreated to one of the neighborhood girls' homes for safety. Bullock was the only one from the group who did not do so.

Ten months after the shooting, Lamar Garfield, also co-defendant Bullock's cousin, was stopped by police for a traffic violation; Bullock was a passenger in the vehicle. Although both men used aliases when stopped, the police quickly determined Garfield's real name and brought him in for questioning in relation to the Rivera murder. Bullock was permitted to leave the scene of the stop. It was during this questioning that Garfield gave a statement implicating Hagwood and Bullock for the Rivera murder. That statement, which was introduced at the preliminary hearing and trial, related a conversation Garfield had with the co-defendants two day after the shooting. Specifically, Garfield relayed the following discourse among the men:

**Hagwood:** I don't know what happened.

**Bullock:** That was the wrong guy, you got the wrong guy. You didn't have to pop him cuz. It was only supposed to be a "jamming" [i.e, robbery] and that was the wrong person anyway.

Statement of Lamar Garfield, 3/6/2005, at 1.

Garfield, however, recanted this statement at both the preliminary hearing and at trial; he testified he made up the entire conversation he had with the co-defendants about the shooting. N.T. Preliminary Hearing, 7/5/2006 at 62; N.T. Trial, 9/4/2008, at 81, 83. Essentially[,] he testified that the police told him the co-defendants had implicated him in the shooting, and because he "was not going to take credit for something he did not do," he "came up with a story and told the detectives that [Bullock and Hagwood] did it." *Id*. at 94. Garfield also testified that the cops told him if he did not consent to have the statement videotaped, they were going to charge him for the

- 2 -

Rivera murder. *Id*. at 91. By contrast, at trial Garfield's arresting officers testified that they never intimidated Garfield into giving the incriminating statement and that, prior to him giving the incriminating statement regarding Bullock and Hagwood, the officers never told him that Hagwood and Bullock had "dimed" on him regarding the murder.

*Commonwealth v. Bullock*, 3174 EDA 2008 at 3-5 (Pa. Super., filed April 28, 2010) (unpublished memorandum) (footnotes omitted), *appeal denied*, 16 A.3d 502 (Pa. 2011).

A jury found Bullock guilty of third-degree murder, robbery, possession of an instrument of crime and criminal conspiracy to commit robbery. The trial court sentenced Bullock to an aggregate term of imprisonment of 40-80 years.[2] On appeal, this Court affirmed Bullock's judgment of sentence and the Pennsylvania Supreme Court denied allocatur.

Bullock filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who later filed a petition to withdraw and a *Turner/Finley*[3] no-merit letter. Bullock filed two sets of objections to counsel's petition to withdraw and requested counsel to draft a brief or permit Bullock to proceed *pro se*. Counsel then filed an amended no-merit letter. The PCRA court conducted a *Grazier*[4] hearing, after which Bullock withdrew his request to

---

[2] Hagwood was convicted of second-degree murder, robbery, criminal conspiracy and PIC and was sentenced to life imprisonment.

[3] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

proceed *pro se*. On June 9, 2014, the PCRA court filed notice of its intent to dismiss Bullock's PCRA petition in accordance with Rule 907 of the Pennsylvania Rules of Criminal Procedure; Bullock filed a response to the Rule 907 notice. On July 10, 2014, the PCRA court dismissed Bullock's petition and granted appointed counsel permission to withdraw. This timely *pro se* appeal followed.

Bullock raises the following issues for our review:

1) Whether counsel was ine[f]fective, for failing to advance appellant's sixth amendment right, to have compulsory process for obtaining witnesses in his favor/ whether appellant's due process / equal protection of the law was violated, fourteenth amendment?

2) Whether trial counsel was ineffective, for failing to object to the judge charging the jury on criminal conspiracy to commit third degree murder/ whether trial judge abused discretion by allowing jury to return with guilty verdict under third degree/ whether defendant's due process right's [sic] were violated?

3) Whether defendant's due process right's [sic] and equal protection of the law fourteenth amendment/ sixth amendment right of fair trial was violated, for failure to request mere presence charge was the result of counsel's ineffectiveness/ defendant's right to be present on a public street?

4) Whether this court should reverse the prior judgment of the lower court, because the same robbery that was the basis of appellan't [sic] conviction for third degree murder cannot be an act of unintentional killing which does not support guilt under third degree murder/ Whether appellant was sentenced 'illegally' upon felony murder and robbery, criminal conspiracy to commit robber is a question of 'legality' of a sentence that can never be waived/ Whether sentences imposed as singal [sic] trial, double jeopardy prevents this court from exceeding it [sic] legislative authorization by imposing multiple punishments for the 'same offense'?

5) Whether defendant's confrontation clause right's [sic] were violated under the sixth amendment where out-of-court statement was used to incriminate defendant and co-defendant, where defendant had not cross-examined co-defendant as to what witness said and without a limiting instructing being provided to the jury, that the statements used could not be considered as evidence against defendant, where co-defendant had not authenticated the statement being made by another?

Appellant's Brief at iv.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, *Edmiston v. Pennsylvania*, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012) (citation omitted). "[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. *See* 42 Pa.C.S. § 9543(a)(3).

As this Court has repeatedly stated,

[t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111, 1127 (2011).

***Commonwealth v. Rykard***, 55 A.3d 1177, 1189-1190 (Pa. Super. 2012), ***appeal denied***, 64 A.3d 631 (Pa. 2013). A failure to satisfy any prong of the ***Pierce*** test will require rejection of the claim. ***See Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014).

Preliminarily, we note that Bullock has waived his fifth issue raised on appeal, wherein he argues that the use of Garfield's statement at trial violated the Confrontation Clause. This allegation should have been raised on direct appeal, but was not. An allegation is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b); ***see also Commonwealth v. Elliott***, 80 A.3d 415, 430 (Pa. 2013). We further note that Bullock's failure to include this claim in his PCRA petitions provides additional grounds for waiver. ***See*** Pa.R.Crim.P. 902(B) ("Failure to state … a ground [for relief] in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."). Accordingly, we are precluded from addressing the merits of this claim.

We have reviewed Bullock's remaining issues raised on appeal, along with the briefs of the parties, the certified record and the applicable law. The

Honorable Barbara A. McDermott's July 10, 2014 opinion ably and comprehensively disposes of Bullock's issues raised on appeal, with appropriate reference to the record and without legal error. We affirm on the basis of that decision. *See* PCRA Court Opinion, 7/10/14 at 6-7, 10, 14-15, (finding: 1) even assuming proposed witnesses existed and were willing to testify on Bullock's behalf, their testimony would not have changed the outcome of the trial given fact that jury chose to believe Garfield's statement that Bullock planned the robbery that resulted in the murder; 2) conspiracy to commit third degree murder is a cognizable offense under Pennsylvania law, therefore trial counsel had no basis on which to object to Bullock's charge or conviction thereof; 3) trial counsel could not be ineffective for failing to instruct mere presence jury instruction where trial court did, in fact, issue a mere presence instruction; and 4) Bullock's convictions of robbery, third-degree murder and conspiracy did not merge for sentencing purposes and thus did not constitute an illegal sentence).

Order affirmed.

Judge Jenkins joins the memorandum.

Judge Mundy concurs in the result.

- 8 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2015

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0701821-2006
:
:
v. :
:
: **FILED**
:
MARCO BULLOCK : JUL 10 2014
:
: **Post Trial Unit**
:

### OPINION AND ORDER

McDermott, J.                                                    July 10, 2014

### Procedural History

On September 9, 2008, petitioner was convicted by a jury of Third-Degree Murder, Robbery, Conspiracy, and Possession of an Instrument of Crime. On October 27, 2008, the Honorable Renee Cardwell Hughes sentenced petitioner to an aggregate sentence of forty to eighty years of incarceration.

On April 28, 2010, Superior Court of Pennsylvania affirmed the petitioner's judgment of sentence. On January 25, 2011, the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal.

On July 5, 2011, petitioner filed a *pro se* Post-Conviction Relief Act (PCRA) petition. On June, 14, 2012, Barnaby Wittels, Esquire was appointed to represent petitioner. On July 29, 2013, PCRA counsel filed a *Finley* letter pursuant *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988)(*en banc*) and a motion to withdraw. On April 1st and April 10, 2014, petitioner filed objections to the *Finley* letter and a motion to order counsel to draft a brief or permit petitioner to proceed *pro se*. On April 29, 2014, PCRA counsel filed a supplemental *Finley* letter.

On May 2, 2014, petitioner filed a motion for a *Grazier* hearing. On June 9, 2014, after a hearing, petitioner withdrew his motion to proceed *pro se*. On June 9, 2014, this Court filed a Notice of Intent to Dismiss pursuant Pa.R.Crim.P. 907.

On June 26, 2014, this Court received petitioner's response to the 907 notice, in which he asks for more time and for permission to re-plead his claim as to Lamar Garfield, as discussed infra, under *Commonwealth v. Medina*, --- A.3d ----, 2014 PA Super 108.

## Facts

The Superior Court of Pennsylvania presented the facts in this case as follows:

A group of about eight friends gathered together on 9th and Cantrell Streets in the city of Philadelphia around 11 o'clock on the evening of May 6, 2004. About 20 minutes later, co-defendant Bullock, who used to live in that neighborhood, joined the crowd. Everyone in the group got along; they smoked blunts, drank and socialized.

Approximately 20 minutes following Bullock's arrival, co-defendant Hagwood appeared at the scene wearing a hoodie; no one other than Bullock seemed to personally know him. Hagwood asked one of the girls in the group for her phone number and then inquired if anyone had marijuana. When the victim, 18-year-old Andrew Rivera, indicated he had some marijuana, the two men walked about two houses away from the group. Less than one minute later, Rivera yelled for help and an eyewitness saw someone hit him over the head with the handle of a gun which caused Rivera to collapse. One eyewitness testified he then heard eight shots fired at the victim; the bullets penetrated the victim's arm, flank, chest, abdomen and groin. While the shots were being fired the entire group retreated to one of the neighborhood girls' homes for safety. Bullock was the only one from the group who did not do so.

Ten months after the shooting, Lamar Garfield, also co-defendant Bullock's cousin, was stopped by police for a traffic violation; Bullock was the passenger in the vehicle. Although both men used aliases when stopped, the police quickly determined Garfield's real name and brought him in for questioning in relation to the Rivera murder. Bullock was permitted to leave the scene of the stop. It was during this questioning that Garfield gave a statement implicating Hagwood and Bullock for the Rivera murder. That statement, which was introduced both at the

preliminary hearing and trial, related a conversation Garfield has with co-defendants two days after the shooting. Specifically, Garfield relayed the following discourse among the men:

> Hagwood: I didn't know what happened.
>
> Bullock: That was the wrong guy, you got the wrong guy. You didn't have to pop him [C]uz. It was only supposed to be a "jamming" and that was the wrong person anyway.[1]

Statement of Lamar Garfield, 3/6/2005, at 1.

Garfield, however, recanted this statement at both the preliminary hearing and at trial; he testified that he made up the entire conversation he had with the co-defendants about the shooting. N.T. Preliminary Hearing, 7/5/2006, at 62; N.T. Trial, 9/4/2008, at 81, 83. Essentially he testified that the police told him the co-defendants had implicated him in the shooting, and because he "was not going to take credit for something he did not do," he "came up with a story and told the detectives that [Bullock and Hagwood] did it." *Id.* at 94. Garfield also testified that the cops told him if he did not consent to have the statement videotaped, they were going to charge him for the Rivera murder. *Id.* at 91. By contrast, at trial Garfield's arresting officers testified that they never intimidated Garfield into giving the incriminating statement and that, prior to him giving the incriminating statement regarding Bullock and Hagwood, the officer never told him that Haywood and Bullock had "dimed" on him regarding the murder.

Hagwood was arrested by police in connection with the instant case on March 31, 2006. N.T. Trial, 9/4/2006, at 223. Police, however, remained unsuccessful in locating and apprehending Bullock until April 19, 2006, when they went to Garfield's home to serve him with a subpoena to testify against Hagwood. There, the officers found Bullock; they held a shotgun to his head when he opened the front door. He instantly froze, got down on the ground, and was arrested. *Id.* at 262.

*Commonwealth v. Bullock*, 3174 EDA 2008 (Pa. Super. filed April 28, 2010)(non-precedential decision).

### Issues

In his July 5, 2011, *pro se* PCRA petition, petitioner raised the following issues:

1. "Whether counsel was ineffective, [sic] for failing to advance appellant's <u>sixth amendment right</u>, [sic] 'to have compulsory process for obtaining witnesses in his

---

[1] Footnotes omitted.

favor'/ [sic] whether appellant's due process/equal protection of the law was violated, [sic] fourteenth amendment?"

2. "Whether appellant was denied his constitutional right, [sic] of due process, and effective counsel, where counsel failed to object to improper, highly prejudicial 'remarks', [sic] made by trial judge at sentencing, and whether counsel was ineffective for failing to properly raise, [sic] litigate this issue on direct appeal?"

3. "Whether counsel was ineffective, [sic] for failing to object before trial of [sic] appellant being charge[d] with criminal conspiracy to commit Third-Degree Murder/whether [sic] trial judge abused her discretion for instructing jury on above, and allowing jury to return with a guilty verdict with 'same', and whether appellant's due process right's [sic] were violated/ [sic] equal protection of the law?"

In his August 5, 2013 *pro se* PCRA petition and objection to counsel's *Finley* letter petitioner raised the following issues:

1. Presentation of Detective Kenneth Rossiter's personal issues would have resulted in a different outcome.

2. Counsel was ineffective for failing to investigate or subpoena witnesses.

3. Counsel was ineffective for failing to object to prejudicial remarks made at sentencing.

4. Trial counsel was ineffective for not objecting to the presentation of Conspiracy to Commit Third-Degree Murder during the jury instructions.

5. Trial counsel was ineffective for not objecting to the Commonwealth introducing statement made by Lamar Garfield.

6. Petitioner alleges that the Commonwealth committed a *Brady* violation.

4

In his April 1, 2014, *pro se* PCRA petition and objection to counsel's *Finley* letter, petitioner raised the following issue:

1. "Whether defendant's , 'due process right's', [sic] and equal protection of the law, fourteenth amendment/ [sic] sixth amendment right of a fair trial was [sic] violated, for failure to request 'mere presence charge' [sic] was the result of counsel's ineffectiveness/ [sic] defendant's right to be present on a public street?"

In his fourth and final *pro se* PCRA petition filed April 10, 2014, petitioner raised the following issues:

1. "Whether the imposition of sentence on a constituent offense is impermissible, where the offender has previously been sentenced upon the greater offense."

2. "Whether appellant, [sic] convicted of (third-degree murder) [sic] while in the course of a robbery, cannot be separately convicted and sentenced for the same armed robbery?"

3. "Whether this court should reverse the 'prior' [sic] judgment of the lower court, because the same armed robbery that was the basis for appellant's conviction of (third-degree murder), [sic] cannot be an act of intentional killing, which does not support guilt under (third-degree murder) [sic]?"

4. "Whether appellant was sentenced 'illegally', [sic] upon the felony murder and robbery, [sic] criminal conspiracy to commit robbery, is a question of the legality of a sentence that can 'never' [sic] be waive[d]?"

5. "Whether sentences imposed at [sic] sing[le] trial, [sic] double jeopardy prevents the court from exceeding its legislative authorization by imposing multiple punishments for the same offense?"

5

To warrant relief based on a claim of ineffective assistance of counsel, a defendant must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to be effective. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195-96 (Pa. 2012)(citation omitted). To overcome the presumption, the petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Bennett*, 57 A.3d at 1195-96 (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1195-96.

In his first allegation of error, petitioner argues that trial counsel was ineffective for failing to have compulsory process for obtaining witnesses in his favor. PCRA counsel interprets this claim as alleging trial counsel was ineffective for failing to properly investigate and present three witnesses at trial. Petitioner claims that three individuals, Michael Delerico, Samantha Teal, and Rosemarie Kelly, would testify that after the shooting petitioner ran in a different direction than the shooter.

To prevail on a claim that trial counsel was ineffective for failing to present a witness, a defendant must demonstrate that: (1) the witness existed; (2) counsel was either aware of or should have been aware of the witness's existence; (3) the witness was willing and able to

6

cooperate on behalf of the defendant; and (4) the proposed testimony was necessary to avoid prejudice to the defendant. *Commonwealth v. Bryant*, 855 A.2d 726, 746 (Pa. 2004)(*citing Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 630 (2001)).

Here, even assuming the petitioner's proposed witnesses existed and were willing to testify on behalf of the petitioner, their testimony would not have changed the outcome of the trial and petitioner suffered no prejudice from their absence. John Avallone, Gabriella Bloise, and Amanda DiDomenicis testified that that everyone ran into Amanda's house after the shooting except for the petitioner. None of the eyewitnesses testified to seeing petitioner leave the scene of the murder. N.T. 9/3/2008 at 102-103, 140-141, 157-159. Having the petitioner's proffered witnesses testify that the petitioner ran in a different direction than the shooter would not have changed the outcome of the trial. This Court recognizes that petitioner was convicted primarily on the statement of Lamar Garfield which established petitioner's participation in the planning of the robbery. Even if witnesses testified that petitioner ran a certain way after the murder, this would not affect the fact that the jury chose to believe Garfield's account that the petitioner planned the robbery that resulted in the murder. This Court notes that in his April 1, 2014 petition, petitioner admits that he agreed to commit a robbery. PCRA petition April 1, 2014 at 37. This Court agrees with PCRA counsel's assessment that this issue is meritless.

Next, petitioner argues that counsel was ineffective for failing to object to prejudicial remarks made by the trial judge at sentencing. Petitioner also asserts that appellate counsel was ineffective for failing to raise this issue on appeal. Under 42 Pa.C.S. § 9543(a)(3), petitioner must prove by a preponderance of the evidence that the issue has not been previously litigated or waived.

The Superior Court of Pennsylvania addressed this issued as follows:

7

Bullock next complains that his statutory maximum sentence of 40-80 years[] imprisonment is manifestly unreasonable because the trial judge considered facts not in evidence and did not properly consider his criminal history, which included an acquittal on similar murder charges.[2]

It is true, that when a court sentences a defendant outside the guidelines, it must state its reasons on the record. 42 Pa.C.S.A. § 9721(b); *Commonwealth v. Byrd*, 657 A.2d 961 (Pa. Super. 1995). In addition, the court must demonstrate that it understands the applicable guidelines ranges, yet explain why it chose to deviate from them. Id. (citation omitted).

In *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007), our Supreme Court discussed what out Court's function is when reviewing a trial court's sentence. Specifically, it stated that the central focus of substantive appellate review is whether a sentence outside the Guidelines is "unreasonable," 42 Pa.C.S.A. § 9781(c), and that in making this "unreasonableness" inquiry we are to consider four things:

(1) The nature and circumstance of the offense and the history and character of the defendant;

(2) The opportunity of the sentencing court to observe the defendant including any presentence investigation;

(3) The findings upon which the sentence was based; and

(4) The Guidelines promulgated by the Commission.

*Walls*, at 963, *citing* 42 Pa.C.S.A. § 9781(c).

Here, the sentencing judge reviewed a presentence report which included Bullock's prior record score (0) and offense gravity scores (ranging from a 14 for murder and a 3 for PIC), victim impact statements, and testimony from Bullock's family. Moreover, as the Commonwealth correctly notes, Bullocks sentence was subject to the deadly weapon enhancement because of the possession of a firearm in the commission of the offenses. The court places its reasons for its sentence on the record as follows:

> It's clear to me Mr. Hagwood didn't have the capacity to plan this murder, but you did, and you did plan it. And there is absolutely no question that you were found guilty of this crime and not guilty of the prior crimes, but I am permitted to consider everything that I have learned about you over the course of the past year, and you did participate in the murder in South Philly in the same way that you participated in this murder. You set people up and you walk away. The consequences aren't yours because you set people up, and you have a long

---

[2] Footnote omitted.

history, not of convictions, but of getting arrested for setting people up, and that's why you are standing in front of me today because you are smart, and I have a hard time processing you.

\* \* \*

You're very smart, and you are a setup man, and that's what you did to Andrew Rivera. Your coconspirator chose the wrong victim, but you definitely intended for a robbery to go down that day, and you are definitely responsible for the consequences of what occurred that day.

\* \* \*

The guidelines in this case would call for 90 months to the statutory limit. I find the statutory limit to be exceedingly appropriate because you set in place something that you could not control, but you definitely set it in place.

\* \* \*

Mr. Bullock, *I feel this is appropriate because of the reign of terror that you have wreaked in our community.* N.T. Sentencing, 10/27/2008, at 34-36 (emphasis added).

In sum the court's sentence was based upon five "aggravating" factors (1) inconsistent and windfall verdict of third-degree murder for Bullock; (2) exploitation of his cousin and luring him to commit the actual crime; (3) his PRS severely underestimated Bullock's criminal history; (4) Bullock used his intelligence to escape blame from the crimes and he was the mastermind behind the crimes; (5) Bullock's actions ended the victim's life as well as any real life for Hagwood who will serve the rest of his life in prison for the instant crimes.

Based on the above, we believe that the sentence is fair and just in light of the seriousness of the offenses, Bullock's Character, and his presentence history, The trial court demonstrated that it was aware of the guideline ranges, and provided considered and thoughtful reasons for deviating from those ranges in handing down Bullock's sentence. Accordingly, we find no abuse of discretion. *Walls, supra.*

*Commonwealth v. Bullock*, 3174 EDA 2008 (Pa. Super. filed April 28, 2010)(non-precedential decision).

This issue has been previously litigated; thus, this Court agrees with PCRA counsel's assessment that this issue is not properly presented.

9

Petitioner claims that trial counsel was ineffective for failing to object to the appellant being charged with Conspiracy to Commit Third-Degree Murder, for failing to object to the trial judge instructing the jury on Conspiracy to Commit Third-Degree Murder, and for allowing the jury to return a verdict of guilty as to Conspiracy to Commit Third-Degree Murder.

In *Commonwealth v. Fisher*, 80 A.3d 1186 (Pa. 2013), the Pennsylvania Supreme Court confirmed that Conspiracy to Commit Third-Degree Murder is a cognizable offense. Therefore, trial counsel was not ineffective for failing to object to this offense.

Petitioner asserts trial counsel was ineffective for failing to object to the Commonwealth introducing the statement made by Lamar Garfield as it was inadmissible hearsay.

Pennsylvania Rule of Evidence 803.1 provides:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
> (1) Prior Inconsistent Statement of Declarant-Witness. A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and;
> (A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;
> (B) is a writing signed and adopted by the declarant; or
> (C) is a verbatim contemporaneous electronic, audiotaped, or videotaped recording of an oral statement. Pa.R.E. 803.1

Prior inconsistent statements made by a witness that is available for cross-examination are properly introduced as substantive evidence. *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992); *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986).

At trial, Garfield denied being present when the petitioner and Hagwood discussed the murder. N.T. 9/3/2008 at 60. On March 5, 2005, Garfield gave a statement in which he described that he was present when Hagwood and the petitioner discussed the murder. *Id.* at 96, 212. The statement was signed and adopted by Garfield. *Id.* at 84. Garfield's statement was competent

10

evidence and properly introduced at trial. This Court agrees with PCRA counsel's assessment that trial counsel was not ineffective for failing to object to the statement.

Petitioner argues that the Commonwealth failed to produce any 911 calls made on May 6, 2004 and any and all police investigation documents. Under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. "[T]o establish a *Brady* violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." *Commonwealth v. Ly*, 980 A.2d 61, 75 (Pa. 2009)(*citing Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (Pa. 2008)).

The burden of proof is on the petitioner to demonstrate that the Commonwealth withheld or suppressed evidence. *Ly*, 980 A.2d at 75(*citing Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999)). In interpreting the federal precedent, the Pennsylvania Supreme Court has explained that, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the petitioner, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the petitioner. *Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012)(*citing Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005); *Commonwealth v. Collins*, 888 A.2d 564, 577-78 (Pa. 2005)).

Unless a criminal defendant can show bad faith on the part the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). An allegation that

destroyed evidence was exculpatory must be supported by more than a "mere assertion." *Commonwealth v. Snyder*, 963 A.2d 396, 406 (Pa. 2009).

PCRA counsel explains that although 911 calls are recorded, and thus, the evidence petitioner requests probably existed at one time, it is impossible to show that a 911 call would have been exculpatory or that not having the call prejudiced the petitioner. Instead, it almost certainly had no value to petitioner since at the time of the call the petitioner was viewed as merely being present at the scene of the crime. PCRA counsel also asserts that there is no reason to believe that if the call was later destroyed it was done in bad faith. Instead, if it existed and was destroyed it was almost certainly the result of normal procedure. This Court agrees with PCRA counsel's assessment. There clearly was no bad faith on the part of the Commonwealth in failing to preserve a 911 call. Also, there is no reason to believe that the call was exculpatory.

In petitioner's first *pro se* petition he requested the following items:

1) All 911 calls that were presented to police operator on May 6, 2004.
2) Any and all police investigation documents of above date.
3) Any and all police information of "prior" suspects that were pursued.
4) All information of description of shooter.
5) Initial probable cause to arrest petitioner (Marco Bullock).
6) Police survey's of witnesses who gave information anonymously but declined to give a statement, that were present on Cantrell Street May 6, 2004.

PCRA counsel explains that he construes petitioner's request for discovery as a meritless allegation of a *Brady* violation. Petitioner does not frame his request as an allegation that the Commonwealth withheld exculpatory evidence; and, thus this Court will not address the request as such.[3]

Petitioner argues that presentation of Detective Kenneth Rossiter's personal issues would have resulted in a different outcome. PCRA counsel interprets petitioner's claim that PCRA counsel was ineffective for failing to allege an after-discovered evidence claim.

---

[3] It is also clear to this Court that if any of these item existed they would have been provided to trial counsel.

12

To prevail on an after-discovered evidence claim, a petitioner must establish that: (1) the evidence could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) it will not be used solely to impeach the credibility of a witness; and (4) it would likely result in a different verdict if a new trial were granted. *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008). The test is conjunctive; the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

In *Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012), the Superior Court affirmed the PCRA court's denial of appellant's PCRA petition alleging that the fact that criminal charges were filed against the detective that testified at appellant's suppression hearing was after-discovered evidence. The court found that the detective's Theft by Unlawful Taking, False Swearing in Official Matters, Unsworn Falsification to Authorities, Obstructing Administration of Law or Other Governmental Function, and Official Oppression charges would be used solely to impeach the detective's credibility. *Id.* Further the court found that there was no nexus between the appellant's case and the detective's alleged misconduct that occurred two years after appellant's conviction. *Id.* at 537-38 (*citing Commonwealth v. Soto*, 983 A.2d 212 (Pa. Super. 2009)).

Here, this claim fails both the third and fourth prong of the after-discovered evidence test. At the outset, this Court notes that neither petitioner nor PCRA counsel provided this Court with any evidence of any misconduct by Detective Rossiter other than references to a newspaper article which was not provided as an exhibit.[4] However, assuming that there is evidence that

---

[4] *Commonwealth v. Castro*, 19 EAP 2013 (Pa. decided June 16, 2014)(holding that a newspaper article alone cannot establish an after-discovered evidence claim).

13

Detective Rossiter engaged in overtime abuse, this claim does not merit relief. The evidence would solely be used to impeach Detective Rossiter's credibility. Petitioner specifically states that the only use for this evidence would be impeachment. Further, petitioner provides no nexus between Detective Rossiter's overtime abuse and how it would affect this case. This Court agrees with the assessment of the PCRA counsel that this claim is meritless.

The following issues raised by the petitioner were not addressed by counsel in his *Finley* letters. After independent review this Court determines the issues to be meritless.

Petitioner alleges that trial counsel was ineffective for failing to request a "mere presence" charge. The trial court instructed the jury that:

> A person cannot be convicted because they were *merely present* with others even if the person knew what the others were doing or planning to do. There must be proof of the agreement between the defendant and another person to form or continue a conspiracy. To be proven guilty of being a conspirator the defendant must have intended to act jointly with another person and must have intended that the crimes be the goal of the conspiracy. N.T. 9/5/2008 at 88-89 *(emphasis added)*.

The trial court instructed the jury that they could not convict the petitioner because he was merely present with others. Petitioner suffered no prejudice from trial counsel failing to request this charge. This claim is meritless.

Petitioner make multiple allegations of error arguing that because he was convicted of Third-Degree Murder that occurred in the course of a robbery he cannot be separately convicted and sentenced for Robbery. Petitioner argues that the sentences imposed on him are illegal and there was a violation of double jeopardy for imposing multiple punishments for the same offense.

Sentences are appropriate for merger when the same facts support convictions for more than one offense, the elements of the lesser offense are all included within the elements of the

14

greater offense, and the greater offense includes at least one additional element. *Commonwealth v. Ward*, 856 A.2d 1273, 1276 (Pa. Super. 2004)(*citing Commonwealth v. Anderson*, 650 A.2d 20 (Pa. 1994)). However, where both offenses require proof of at least one element that is different, the sentences do not merge. *Id.* (finding convictions for Attempted Homicide and Robbery do not merge for sentencing purposes because they are not greater-and-lesser-included offenses); *Commonwealth v. Harper*, 499 A.2d 331, 337 (Pa. Super. 1985)(finding the offenses of Robbery and First-Degree Murder did not merge and the consecutive sentences imposed for Murder and Robbery were proper).

Petitioner was convicted of Third-Degree Murder and Robbery. Each charge requires proof of an element that the other does not.[5] Third-Degree Murder and Robbery are not lesser included offenses and do not merge for purposes of sentencing. This claim is meritless.

Petitioner argues "[w]hether this court should reverse the 'prior' [sic] judgment of the lower court, because the same armed robbery that was the basis for appellant's conviction of (third-degree murder), [sic] cannot be an act of intentional killing, which does not support guilt under (third-degree murder) [sic]?" This claim challenges the sufficiency of the evidence supporting the petitioner's convictions. The Superior Court of Pennsylvania addressed the sufficiency of the evidence as follows:

> Bullock claims that the evidence was insufficient to prove his culpability in any criminal conspiracy. Because conspiracy forms the basis of all his remaining convictions, he claims that his verdict cannot stand. We disagree and find there was sufficient proof, although circumstantial, to prove that Bullock was guilty of conspiracy to commit robbery.

---

[5] A person is guilty of Robbery if, in the course of committing a theft, he inflicts serious bodily injury upon another. 18 Pa.C.S. § 3701(a)(1)(i). 18 Pa.C.S. § 2502 establishes that Murder in the Third-Degree is any murder that is not committed as an intentional killing, and is not committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony. Third-degree Murder is a killing with malice. *See Commonwealth v. Thomas*, 717 A.2d 468, 479-80 (Pa. 1998).

15

As with accomplice liability, mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. *Commonwealth v. Barnes*, 871 A.2d 812 (Pa. Super. 2005). To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) and overt act was done in furtherance of the conspiracy. 18 Pa.C.S. § 903.

Here, Garfield's statement, if taken as true by the jury, provided that Bullock and Hagwood had agreed to "jam" someone ("White Boy Tommy") and that Hagwood shot the wrong person despite the plan. Although Hagwood was the individual that actually shot the victim, it is well known that even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. See also *Commonwealth v. Olds*, 469 A.2d 1072 (Pa. Super. 1983)(direct proof of agreement is not required; conduct of parties and circumstances surrounding such conduct may be sufficient to establish inference of common design).

*Commonwealth v. Bullock*, 3174 EDA 2008 (Pa. Super. filed April 28, 2010)(non-precedential decision).

Under 42 Pa.C.S. § 9543(a)(3), petitioner must prove by a preponderance of the evidence that the issue has not been previously litigated or waived. This claim has been previously litigated.

Finally, in his response to this Court's 907 notice, petitioner asks for more time so that he can use *Commonwealth v. Medina*, --- A.3d ----, 2014 PA Super 108, in order to provide a basis for relief based on Lamar Garfield's recantation of the statement he initially gave to police. However, Garfield recanted in court, on the witness stand and in full view of the jury, which was free to assess the veracity of his recantation. *Medina*, conversely, involves a grant of PCRA relief where witnesses who gave adverse testimony at trial recant that testimony subsequently.

16

Thus, *Medina* is inapposite and cannot form the basis of a successful claim based on Lamar Garfield's recantation during trial. For this reason, the request to amend his petition contained in his response to the 907 notice is DENIED.

Petitioner's multiple PCRA filings fail to establish a meritorious ineffective assistance of counsel claim, *Brady* claim, after-discovered evidence claim, or illegal sentence claim. For the foregoing reasons, the petition is hereby DISMISSED. Furthermore, Petitioner's counsel's motion to withdraw is hereby GRANTED.

BY THE COURT,

_Barbara McDermott_

Barbara A. McDermott, J.

17